UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS DAWSON,

        Petitioner,

v.                                   Case No.  8:10-cv-2857-T-17MAP

SECRETARY, DEPARTMENT OF CORRECTIONS,

        Respondent.

_____

## ORDER

This cause is before the Court on Petitioner Douglas Dawson's timely-filed pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he challenges his convictions for attempted second degree murder (two counts), felonious possession of a firearm, and shooting into a building, which arise out of the Sixth Judicial Circuit, Pinellas County, Florida, in case no. CRC05-06565CFANO. (Doc. 1).

A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

### Procedural Background

Dawson was found guilty after a jury trial of attempted second degree murder (two counts), felonious possession of a firearm, and shooting into a building as charged in case no. CRC05-06565CFANO. Adjudicated guilty in accordance with the verdicts, Dawson was sentenced to 20 years in prison on each of the attempted second degree murder counts. He was sentenced to 15-year prison terms on the remaining counts, and a three-year mandatory prison term was imposed on the felonious firearm possession count. The

sentences run concurrently. Dawson appealed, and on June 1, 2007, the state district court of appeal affirmed without written decision in case no. 2D06-1818. *Dawson v. State*, 958 So. 2d 930 (Fla. 2d DCA 2007)[table]. He did not seek rehearing; nor did he petition for certiorari.

Dawson filed a pro se petition for writ of habeas corpus dated August 1, 2007, in which he alleged his appellate counsel on direct appeal rendered ineffective assistance. An amended petition dated August 17, 2007, followed. Pursuant to the state court's directive, the state responded, and on June 23, 2008, Dawson's petition in case no. 2D07–3657 was denied without elaboration. *Dawson v. State*, 985 So. 2d 538 (Fla. 2d DCA 2008)[table].

Dawson filed a pro se motion for postconviction relief dated December 12, 2008, under Fla.R.Crim.P. 3.850. A supplement followed. After denying the motion and supplement in part and securing a response from the state, the postconviction court summarily denied the remaining ground in the rule 3.850 motion by order rendered August 13, 2009. Following denial of rehearing, Dawson appealed, and on May 28, 2010, the state appellate court affirmed the summary denial without written decision in case no 2D09–4920. *Dawson v. State*, 38 So. 3d 776 (Fla. App. Dist. 2010)[table]. Following denial of rehearing, the mandate issued July 26, 2010.

Dawson then timely-filed the present federal 28 U.S.C. § 2254 petition.

## GOVERNING PRINCIPLES

### A. Federal question

Title 28 U.S.C. § 2254 explicitly requires a federal court to entertain an application for writ of habeas corpus only on the ground that the petitioner is "in custody in violation of

the Constitution or laws or treaties of the United States." § 2254(a). Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Wainwright v. Goode*, 464 U.S. 78 (1983)(citing *Engle v. Isaac*, 457 U.S. 1141(1982)); *Smith v. Phillips*, 455 U.S. 209 (1982). The writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights. *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000). Even when a petition which actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *Willeford v. Estelle,* 538 F.2d 1194, 1196-98 (5th Cir. 1976).

## B. Exhaustion and procedural default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(c). To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Pursuant to the procedural default doctrine, a state prisoner seeking federal habeas corpus relief who fails to raise his federal constitutional claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), or the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction

of a defendant who was "actually innocent," as contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The "cause" excusing the procedural default must result from some objective factor external to the defense that prevented the prisoner from raising the claim and which cannot be fairly attributable to his own conduct. *Id.*, 477 U.S. at 488.

The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)); *Murray v. Carrier*, 477 U.S. at 495-96 (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Schlup*, 513 U.S. at 324.

## C. AEDPA deferential standards of review

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). The AEDPA modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under applicable law. *Bell v. Cone*, 535 U.S. 685 (2002).

Under §104 of the AEDPA, § 2254(d) now forbids federal courts from granting habeas relief for claims that previously were "adjudicated on the merits" in state court,

unless the petitioner can establish that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court law, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2). Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but also objectively unreasonable. *Yarborough v. Gentry,* 540 U.S. 1, 4 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam); *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

In addition, § 2254(e)(1) "provides for a highly deferential standard of review for factual determinations made by a state court." *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). The federal court will presume the correctness of state court findings of fact unless the petitioner is able to rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time. i.e., the record before the state court. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398–1401 (2011).

## DISCUSSION

## GROUND ONE

Dawson contends he was denied the right to cross-examine the victim on the

number of the latter's prior felony convictions. In his memorandum, he claims the victim acknowledged in a proffer that he had been twice convicted for a felony. Dawson does not deny he was afforded the opportunity to question the victim regarding the number of felony convictions. Rather, Dawson asserts that the victim had previously indicated in a deposition he was convicted of one prior felony, and Dawson complains he was not allowed to bring out to his jury a discrepancy in the victim's testimony as to the number of his prior felonies.

Under section 90.610, Florida Statutes (2004), a party may attack the credibility of any witness by evidence of a prior felony conviction or misdemeanor involving dishonesty or false statement and the number of such prior convictions. Unless the witness answers untruthfully, this inquiry is generally restricted to the existence of such prior convictions and the number of convictions. *Fotopoulos v. State*, 608 So. 2d 784 (Fla. 1992)(citing *Fulton v. State,* 335 So. 2d 280 (Fla. 1976); *McArthur v. Cook*, 99 So.2d 565 (Fla. 1957); *Leonard v. State*, 386 So.2d 51, 52 (Fla. 2d DCA 1980). If the witness denies having been convicted, or misstates the number of convictions, counsel may impeach by producing a record of past convictions. *See White v. Singletary*, 717 So. 2d 1054 (Fla. 2d DCA 1998)(appropriate method for impeaching a witness who responds incorrectly to a question regarding prior convictions is to enter a certified copy of the prior convictions into the record, citing *Fulton, supra*. If the witness admits the conviction, then the inquiry may not be pursued by the party opponent to the point of naming the crime for which he was convicted. *See Dessaure v. State*, 891 So. 2d 455 (Fla. 2004), *citing Fulton, supra.*

To the extent Dawson relies on his state law-based arguments advanced in the Florida trial and appellate courts, subject matter jurisdiction does not lie to address such contentions. 28 U.S.C. § 2254(a) provides "a district court shall entertain an application for

a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. Federal relief is available to correct only constitutional injury. *Wainwright v. Goode*, 464 U.S. 78 (1983). A challenge to a conviction must therefore do more than pose a question of state law, for such a challenge alleges no deprivation of federal rights and does not merit habeas relief. *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Issues which present nothing more than issues of pure state law are wholly immune from federal habeas review. *See Jamerson v. Sec. for Dep't of Corrs.*, 410 F.3d 682, 688 (11th Cir. 2005) ("Federal habeas relief is unavailable for errors of state law.").

Moreover, this ground is procedurally barred because Dawson did not properly exhaust his ground by fairly presenting the constitutional dimension of his ground at trial and then on direct appeal. His claim was raised in terms of state law at trial, without referencing or substantively addressing the federal due process or the Confrontation Clause.

Dawson did not, in the first instance, fairly present the trial court in a timely manner a constitutional due process or confrontation claim regarding the evidentiary ruling before raising his ground on direct appeal. During the course of cross-examination of the victim, Dawson sought to probe him regarding his deposition testimony on the matter of his prior convictions --without regard to whether the victim at trial accurately testified to the number of prior felony convictions. The state opposed the proposed line of impeachment, asserting that to pursue the matter, Dawson was required to produce certified judgments regarding the victim's priors. The state court agreed, and Dawson did not then assert that denial of the proposed line of inquiry evidence would violate federal constitutional due process and

confrontation guarantees. Nor did he do so when he made the proffer. Moreover, his post-verdict arguments in support of his motion for new trial rested on state law regarding impeachment by prior conviction. (Resp. Ex. 1, V 1 R 55-561; V 2 R 160-164).

In short, neither at trial nor at the hearing on his motion for new trial did Dawson alert the trial court that he was raising a federal due process concern or Confrontation Clause claim. And, he did not request a ruling on any such claim. As a result, he was barred from raising these claims on direct appeal. In Florida, to be preserved, the issue or legal argument must be raised and ruled on by the trial court. *Jones v. State,* 998 So.2d 573, 581-582 (Fla. 2008), *citing Rhodes v. State*, 986 So.2d 501, 513 (Fla. 2008), *modified* 986 So.2d 560 (Fla.2008) (citing § 924.051(1)(b), Fla. Stat. (2006); and Philip J. Padovano, Florida Appellate Practice, § 8.1, at 148 (2007 ed.)("[T]he aggrieved party must obtain an adverse ruling in the lower tribunal to preserve an issue for review.... Without a ruling or decision, there is nothing to review."). Florida's rules on this issue are regularly and consistently applied. *See Rose v. State*, 787 So.2d 786, 797 (Fla.2001) ("The failure of a party to get a timely ruling by a trial court constitutes a waiver of the matter for appellate purposes."); *Richardson v. State*, 437 So.2d 1091, 1094 (Fla.1983) (noting that appellant, having failed to pursue or obtain a ruling on his motion, did not preserve the issue for appeal).

Even aside from Florida's preservation requirement, Dawson did not fairly present a constitutional claim relative to the evidentiary ruling on direct appeal. Dawson argued he was denied his right to cross-examine the victim on the discrepancy in his testimony regarding his prior record. However, he failed to apprise the state appellate court of a claim that the ruling of which he complained was not only a violation of state law, but was also

a violation of his federal constitutional rights.

To satisfy the exhaustion requirement of 28 U.S.C. § 2254(b)(1), a state prisoner must "fairly present" his claim in each appropriate state court to alert that court to the claim's federal nature before seeking federal habeas relief. *See Baldwin v. Reese*, 541 U.S. 27 (2004). Exhaustion is not satisfied "merely" if the petitioner presents the state court with "all the facts necessary to support the claim" or even if a "somewhat similar state-law claim was made." *Kelley v. Sec'y for Dept. of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004), citing *Anderson v. Harless*, 459 U.S. 4, 6 (1982). The petitioner must instead "present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Id. quoting Picard*, 404 U.S. at 277). As the Supreme Court held in *Duncan v. Henry*, 513 U.S. 364 (1995)(per curiam), "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." 513 U.S. at 365-66.

A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and legal bases for the claim. *McNair v. Campbell*, 416 F. 3d 1291, 1302-03 (11th Cir. 2005). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of the law on which he relies or a case deciding such claim on federal grounds, or by simply labeling the claim "federal." *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).

Dawson's argument that he was denied the right to cross-examine the victim did not alert the state appellate court that he was claiming he was deprived of his federal

constitutional right(s) to due process and/or of confrontation. Not fairly presenting the federal constitutional dimension of his ground at trial and on direct appeal in a procedurally correct manner, Dawson defaulted his ground. See Fla.R.Crim.P. 3.850(c); *Harvey v. Dagger*, 656 So. 2d 1253, 1256 (Fla. 1995)("issues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack."). This circuit has long recognized this aspect of Florida law. *See Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.) (claims that could have been or should have been preserved at trial and then raised on direct appeal and were not are procedurally barred), *cert. denied*, 464 U.S. 922 (1983).

Dawson has not shown cause to excuse his default. Any allegation of cause is now procedurally barred by the two-year limitation of Rule 3.850, see *Whiddon v. Dugger*, 894 F.2d 1266 (11th Cir.) (recognizing and applying two-year bar of rule 3.850), *cert. denied*, 498 U.S. 834 (1990), and the state's successive petition doctrine. Not showing cause, Dawson cannot avoid his default, as the cause and prejudice components are in the conjunctive and both must be established to escape the preclusive effect of his procedural default. *Engle v. Isaac*, 456 U.S. 107 (1982). Nor does Dawson meet the fundamental miscarriage of justice exception. He has no new and reliable evidence of actual innocence as contemplated by *Schlup*.

Alternatively, ground one has no merit. Dawson raises his ground as a Fifth Amendment deprivation. (Doc. 1 at 16). He does not, however, raise in ground one a Sixth Amendment confrontation violation. Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. See

*Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)(quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)); *see also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967). Federal habeas corpus relief is not available to correct an error of state law unless so egregious as to deny due process or equal protection. *Pulley v. Harris*, 465 U.S. 37 (1984). Dawson's case does not implicate such concerns.

The Supreme Court has rejected the proposition that the Due Process Clause guarantees the right to introduce all relevant evidence. As the Supreme Court has observed, "the accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). Relevant evidence may, for example, be excluded on account of a defendant's failure to comply with procedural requirements. *Montana, supra*, *citing Michigan v. Lucas*, 500 U.S. 145, 151 (1991)). The Supreme Court has recognized that any number of familiar and unquestionably constitutional evidentiary rules also authorize the exclusion of relevant evidence, such as hearsay rules prohibiting introduction of testimony which, though unquestionably relevant, is deemed insufficiently reliable. *Montana*, 518 U.S. at 42-43.

Applying the AEDPA standards, it is objectively reasonable to conclude the evidentiary ruling Dawson complains of did not violate due process. The state court judge did not preclude Dawson from inquiring of the victim at trial the number of his prior felony convictions, and Dawson's counsel did not raise a complaint on this issue. Instead, his counsel -- in apparent recognition that under state law, he would have to accept the victim's answer absent certified convictions -- sought to impeach the victim by alternative means of eliciting his deposition testimony on the matter of his prior felony convictions. (Resp. Ex.

1, V 2 R 109). Thus, he was not denied the opportunity to impeach the victim by prior convictions. He simply did not do so in a procedurally correct manner.

Moreover, Dawson was afforded, and availed himself of the opportunity to proffer the proposed evidence. During the proffer, the victim acknowledged he had been twice convicted of a felony. (Resp. Ex. 1, V 2 T 128) At that time, Dawson did not inquire of the victim as to his deposition testimony. Nor did he question the victim at trial in accordance to Florida's rules regarding proper impeachment by prior conviction. He simply chose not to do so. Not only does Dawson fail to show that he was denied an opportunity to impeach the victim by prior conviction, Dawson has not shown that due process required the presentation of the victim's deposition testimony regarding the victim's prior felony record. At most, such testimony amounted to collateral impeachment given that the victim acknowledged having two convictions-- which Dawson does not suggest was inaccurate. Accordingly, it is objectively reasonable to conclude Dawson fails to show the evidentiary ruling deprived him of a fundamentally fair trial.

Further and alternatively, even if his ground is construed to raise a confrontation claim, the claim is still without merit. The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." This includes the right to cross-examine witnesses. *See Pointer v. Texas*, 380 U.S. 400, 406–07 (1965). However, "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kentucky v. Stincer*, 482 U.S. 730, 739 (1985)). The Confrontation Clause does not limit the trial judge's ability "to impose reasonable limits on such cross-examinations based upon concerns about, among other

things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 474 U.S. 673, 679 (1986); *see also Alford v. United States*, 282 U.S. 687, 694 (1931) (recognizing that the scope of cross-examination regarding a particular line of inquiry is "within the sound discretion of the trial court," and "it may exercise a reasonable judgment in determining when [a] subject is [inappropriate].").

As pointed out, the victim acknowledged he was twice convicted of a felony. Dawson does not begin to demonstrate that exclusion of the victim's deposition testimony -- that he was convicted once -- would have given the jury a different impression of his credibility. Further and alternatively, any error which might have occurred relative to the evidentiary ruling was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993). The state court's ruling was not arbitrary or disproportionate to the purpose the state procedural rules governing impeachment were designed to serve.

Furthermore, trial court allowed Dawson to conduct broad inquiry of the victim, and sufficient information was elicited from the witness from which the jury could adequately assess the credibility of the victim. *See e.g., De Lisi v. Crosby,* 402 F.3d 1294, 1303 (11th Cir. 2005)(Because the jury was allowed to assess witness's credibility and possible motives for bias, the Sixth Amendment was satisfied).

Dawson cannot prevail on the merits of this claim, whether he alleges it is a Fifth or Sixth Amendment violation. The state decision resulted in a reasonable application of established Supreme Court precedent and a reasonable determination of the facts in light of the evidence.

Ground one does not warrant habeas corpus relief.

**GROUND TWO**

Dawson contends his trial counsel failed to move to suppress statements he made to police. Dawson asserts that he was not advised of the right to have counsel present during interrogation. This ground is exhausted to the extent alleged as the claim of ineffective assistance of counsel raised in his ground two of his supplement to his rule 3.850 motion ("supplement claim two"), the summary denial of which he appealed.

Dawson claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). The petitioner must meet the two-part standard for counsel's performance established by *Strickland v. Washington*, 466 U.S. 668 (1984).

In *Harrington v. Richter*, 131 S.Ct. 770 (2011), the Supreme Court explained the burden of a petitioner claiming ineffective assistance of his counsel:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.,* at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687, 104 S.Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.,* at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.,* at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a

fair trial, a trial whose result is reliable." *Id.,* at 687, 104 S.Ct. 2052.

Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

. . . . .

*Id.*

In *Harvey v. Warden, Union Correctional Institution*, 629 F.3d 1228 (11th Cir. 2011), the Eleventh Circuit reiterated that the petitioner seeking release bears the burden of proof regarding both deficient performance and prejudice. *Id., citing Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). With regard to *Strickland*'s deficiency prong, the Court elaborated, stating:

The performance inquiry will generally boil down to whether trial counsel's actions (or inactions) were the result of deficient performance or sound trial strategy. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955))). To protect counsel's independence, we start with the strong presumption that trial counsel's performance was constitutionally adequate. *Id.*

Two principles underlie this presumption. First, the Supreme Court has time and again counseled against judging trial counsel's performance with the benefit of hindsight. *Id.; see also Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 6, 157 L.Ed.2d 1 (2003) (per curiam) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."); *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002) (same). Second, trial advocacy is not a science, but an art; there are few "right" answers in the proper way to handle a trial. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067 ("Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.").

This presumption is an evidentiary presumption that carries through the trial. *Chandler v. United States*, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (en banc). Thus, a petitioner must not present evidence merely to refute the presumption. Rather, the petitioner must present evidence that outweighs the presumed evidence of competence. *Kimmelman v. Morrison*, 477 U.S. 365, 384 106 S.Ct. 2574, 2588, 91 L.Ed.2d 305 (1986) ("[T]he defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy."). Therefore, "'where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment.'" *Chandler*, 218 F.3d at 1314 n. 15 (quoting *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999)).

We do not apply fixed or rigid rules when evaluating trial counsel's performance. *Strickland,* 466 U.S. at 688-89, 104 S.Ct. at 2065. Rather, a petitioner receives ineffective assistance where the representation "[falls] below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064, reasonableness being the "prevailing professional norms," *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). To put it another way, trial counsel's error must be so egregious that no reasonably competent attorney would have acted similarly. *See Wood v. Allen*, 542 F.3d 1281, 1309 (11th Cir.2008), *aff'd* --- U.S. ----, 130 S.Ct. 841,--- L.Ed.2d ---- (2010) ("[O]ther attorneys might have done more or less ... or they might have made the strategic calls differently, but we cannot say that no reasonable attorney would have done as [he] did." (quoting *Williams,* 185 F.3d at 1244)).

. . . .

*Harvey, supra*.

With regard to the prejudice prong, *Strickland* requires the defendant to show that

there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S., at 694. If a defendant fails to make a proper showing under one of the prongs, the Court need not consider the other prong. *Id.*, 466 U.S. at 697.

Where there had been an adjudication on the merits by the state court, the question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009), citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. *Knowles*, 129 S.Ct. at 1420, citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations"). Under the AEDPA, the "doubly deferential" judicial review which applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard, *Knowles*, 129 S. Ct. at 1420, citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)(per curiam), Dawson's claim of proposed omission of counsel fails.

Dawson faults his counsel for not moving to suppress his statements based on the premise that the constitutional warnings given him did not inform him he had a right to counsel during custodial interrogation. After securing a response from the state, the postconviction court held, in relevant part, as follows:

> In its response, the State stated that the Officer testified that he read the *Miranda* warnings from a card word for word. See Exhibit B: State's Response. The State argues that the standard State Attorney issued rights

advisement card includes a specific advisement of a right to an attorney during question. See Exhibit B. The State also stated that the Defendant made a spontaneous statement to the officer that led to his being placed in handcuffs and read his *Miranda* rights. See Exhibit B. Furthermore, the State argues that the Defendant's defense at trial was self-defense which would have only been feasible with the statements made by the Defendant post *Miranda*. Lastly, the State points out that there was other substantial evidence presented at trial, including the testimony of the eyewitnesses and an audio recording of the Defendant apologizing to the victim. See Exhibit B.

The State's arguments are persuasive. The Defendant's defense at trial was self-defense where he argued that because the victim's boyfriend had a gun, the Defendant used his gun to defend himself. See Exhibit C: Trial Transcript, pgs. 227-228. Moreover, the Defendant called the victim and talked with her about the shooting, stating he was not trying to shoot her, but that he was shooting at her boyfriend. See Id. at 239-241. Therefore, the Defendant was not prejudiced because even if the statements made after he was given *Miranda* warnings had been suppressed, his statements to the victim, in which he admitted to shooting her, would have come in. Consequently, defense counsel was not ineffective for failing to move to suppress statements made by the Defendant. *See Teffeteller v. Duggar*, 734 So. 2d 1009, 1023 (1999). Therefore, this claim is denied.

(Resp. Ex. 17 at 1-2).

Dawson does not overcome the presumption of correctness of the state court's factual findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Furthermore, Dawson's allegations do not overcome the strong presumption counsel's decisions regarding his statements to police were in the exercise of professional judgment. *Strickland*, 466 U.S. at 690.

With respect to his underlying issue, the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), held that an individual must be "clearly informed," prior to custodial questioning, that he has, among other rights, "the right to consult with a lawyer and to have the lawyer with him during interrogation." *Id.,* 384 U.S. at 471. While the Supreme Court held that this warning is invariable, it has not dictated the words in which this essential

information must be conveyed. *See California v. Prysock*, 453 U.S. 355, 359 (1981) (per curiam) ("This Court has never indicated that the rigidity of *Miranda* extends to the precise formulation of the warnings given a criminal defendant.") (internal quotation marks omitted); *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) (safeguards against self-incrimination include "*Miranda* warnings ... or their equivalent"). In determining whether police officers adequately conveyed the warnings required by *Miranda*, reviewing courts are not required to examine the words employed as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably conveyed to the suspect his rights as required by *Miranda*. *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)(quoting *Prysock,* 453 U.S. at 361).

The Supreme Court reached the same conclusion in *Florida v. Powell*, --- U.S. ----, 130 S.Ct. 1195, --- L.Ed.2d ---- (2010).  There, law enforcement officers informed Powell that he had "the right to talk to a lawyer before answering any of [their] questions" and "the right to use any of [his] rights at any time [he] want[ed] during th[e] interview." *Id.,* 130 S.Ct. at 1204-05. The Supreme Court determined that the first statement communicated that Powell could consult with a lawyer before answering any particular question, and the second statement confirmed that he could exercise that right while the interrogation was underway. *Id.*  at 1205. The Court held that, in combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of the interrogation, but at all times. *Id.*

Here, it must be emphasized that Dawson brings his claim as one of ineffective assistance of counsel. He fails to demonstrate that his counsel was constitutionally obliged to seek suppression of his statements on the ground that the warnings did not sufficiently

advise him of the right to consult with an attorney during interrogation.

As pointed out by the state, and in turn, the postconviction court, the rights read Dawson included the right to an attorney during questioning. (Resp. Ex. 17 at 1,2). Under the circumstances, at least one reasonably competent attorney could conclude that the warnings reasonably conveyed Dawson's right to consult with a lawyer and to have the lawyer with him during interrogation. Dawson has not shown prejudice.

Alternatively, any alleged error was harmless. At trial, the state presented the compelling evidence establishing that Dawson committed the charged crimes beyond a reasonable doubt. Dorothy Jenkins' testimony revealed that Dawson had called her prior to the shootings, telling her he was going over to the victim's house to kill someone. (Resp. Ex. 1, V 2 R 54-55). R.W., one of the two victims, testified that a week prior to the shooting, he had argued with Dawson, who had threatened to kill him. And, the latter did so several times prior to the shooting.

R.W.'s testimony further revealed that when Dawson "came over to his house," R.W. had opened the door while holding a gun in his  hand. He put the gun on table and went outside, where they engaged in a fist fight. (Resp. Ex. 1, V 2 T 16-17). Unlike R.W., Dawson had not disarmed himself. Pulling a firearm from his shirt, Dawson fired shots at R.W., who ran inside his house. Dawson kept firing through the door after it was closed. (Resp. Ex. 1, V 2 R 95-99, 102- 06).

M.R., the other victim, witnessed Dawson shoot through the front door as her fiancé ran inside after the first shots. Her testimony reflects that Dawson continued to fire four to five times after the door was closed. (Resp. Ex. 1, V 2 T 23-25, 33).

Alvin Roberts confirmed that R.W. had put down his own gun prior to the fist fight.

Further, several shots were fired after R.W. ran inside and closed the door. Photographic evidence, together with testimony of a forensic technician, established that the door had four bullet holes in it. (Resp. Ex. 1, V 2 R 161).

The state's case against Dawson also included a recorded phone call from Dawson to M.R. at the hospital where she was treated for gunshot wounds inflicted by Dawson. Dawson told M.R. he was not trying to shoot her and he had started shooting before R. W. ran inside the residence. (Resp. Ex. 1, V 3 T 239-41) In addition, Dawson made a spontaneous statement admitting his involvement in the shooting prior to being questioned by police. (Resp. Ex. 1, V 3 R 203).

Independent of the post-*Miranda* statements of Dawson, the state's evidence of Dawson's guilt of the offenses for which he stands convicted was overwhelming. In view of the independent evidence, which also established that Dawson was not justified in the use of his deadly force, admission of Dawson's statements during police questioning had no substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)(quotation omitted). Accordingly, it is objectively reasonable to conclude that there was no reasonable probability of a different outcome had Dawson's counsel pursued suppression on the grounds proposed.

Ground two does not warrant habeas corpus relief.

### GROUND THREE

Dawson claims his counsel rendered ineffective assistance by not raising a *Brady* violation. In his supporting facts, Dawson contends R.W. testified that projectiles were found inside the house where the shooting occurred. According to Dawson, the state did not disclose this evidence in pretrial discovery. This ground is exhausted to the extent

alleged as the claimed omission of counsel in ground three of Dawson's supplement to his rule 3.850 motion, the summary denial of which he appealed.

Dawson contends that at trial, the victim testified he found bullets and the state prosecutor was notified of this. In denying his ground, the postconviction court held, as follows:

> In his motion to supplement, the Defendant alleges that his counsel was ineffective for failing to realize that a Brady violation had occurred. Specifically, he asserts that he first learned that dispensed projectiles were found at the scene of the crime during trial. He asserts that the State negligently and deliberately failed to disclose this evidence and he should be granted a new trial.
>
> During trial, the victim testified that he found two bullets in his home two days after the police left his home. He testified that after talking with the State prosecutor he did not turn them over. See Exhibit B, pgs. 122-23. Later while questioning the technician, [d]efense counsel was able to establish that even if the dispensed projectiles had been retried and tested it would not have established which firearm it was dispensed from. See Exhibit B: TT, pgs, 169-170. Because the evidence would not have made a difference in his case and there was no reason for counsel to object, the Defendant cannot show he was prejudiced. *See Teffeteller v. Dugger*, 734 So. 2d 1009, 1023 (Fla. 1999). Therefore, this claim is denied.
>
> . . . .

(Resp. Ex. 14 at 2-3).

In order establish that the state had violated *Brady,* Dawson's counsel would have to have shown that: (1) the prosecution possessed evidence, including impeachment evidence, favorable to the defense; (2) the defense did not possess the evidence nor could have obtained it with reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defense, a reasonable probability exists that the trial outcome would have been different. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)(noting that *Brady* violations require the evidence to have been suppressed

by the State, be favorable to the defense, and be cumulatively material).

To be prejudicial, the evidence must be such at that disclosure of it would have created a reasonable probability that the proceeding result would have been different. *Strickler,* 527 U.S. at 280. The non-disclosure of cumulative or repetitious evidence is not sufficient to establish a *Brady* claim. *United States v. Agurs*, 427 U.S. 97, 110 n. 16 (1976).

Dawson's rule 3.850 motion did not set forth facts which, even if adduced, would show that projectile evidence was withheld by the state which was favorable to the defense. Although Dawson claimed the evidence was exculpatory, his self-serving allegations in this regard are conclusory. He failed to set forth facts which would show that not one reasonably competent attorney could forego a contention that there was projectile evidence that was exculpatory in nature. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir.1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Moreover, he did not set forth a basis upon which to conclude that the state suppressed projectile evidence. He claimed the victim found two bullets in his home two days later and did not turn the bullets over after speaking with the prosecutor. Even if the prosecutor was made aware of the bullets, Dawson did not specifically allege that the prosecutor told the victim not to turn over the projectiles. Nor does Dawson plead a basis upon which to conclude that the defense could not have obtained the evidence with reasonable diligence by the time of his jury trial.

In addition, Dawson's rule 3.850 motion did not plead a basis upon which to find that not one reasonable competent attorney could forego a contention that there was a reasonable probability the allegedly undisclosed evidence put the whole case in such a

different light as to undermine the confidence in the verdict. *Strickler*, 527 U.S. at 290. Accordingly, he fails to present an arguable basis for counsel to have objected or moved for mistrial on the basis of a *Brady* violation.

Counsel cannot be deemed deficient for foregoing a meritless claim. *See Brownlee v. Haley*, 306 F.3d 1043, 1066-67 (11th Cir. 2002)(counsel was not ineffective for failing to raise non-meritorious issue); *see also, Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995)(counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit). According, it is objectively reasonable to deny Dawson's claim on the deficiency prong of *Strickland*.

The ground can also be disposed of on the prejudice prong without addressing the deficiency prong. Dawson did not, in his rule 3.850 motion, lay out specific facts which, if adduced, would demonstrate that the projectiles inside the victim's home not only came from other than Dawson's gun, but also were expelled at the time of the shooting of the two victims. His speculation that the evidence was exculpatory does not suffice to establish actual prejudice. *See e.g., Harris v. Crosby*, 151 Fed. Appx. 736, 738 (11th Cir. 2005) (unpublished)(petitioner's speculation he would have been convicted of lesser included offense if his trial counsel had requested jury be instructed on lesser was insufficient to establish prejudice).

Nothing in Dawson's allegations indicates that it could be shown the projectiles came from the victim's gun, or that of another, at the same time Dawson pulled his gun from his shirt and fired at R.W. as he ran inside the house. Nor did he furnish a basis upon which to conclude that testing could establish the spent projectiles came from another's gun at the time Dawson continued to shoot into the house where both victims were located.

Given Dawson's failure to set forth facts which would establish that omitted evidence was material to his guilt, it is objectively reasonable to conclude that he fails to demonstrate there was any reasonable probability of a different outcome had his counsel claimed the state committed a *Brady* violation as Dawson has proposed. The state decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

## DAWSON'S REPLY

The Court finds Dawson's arguments in the reply unpersuasive.

Accordingly, the Court orders:

That Dawson's petition is denied. The Clerk is directed to enter judgment against Dawson and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on November 22, 2011.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Douglas Dawson